AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

Kal Kemnitz

V.

Lehman Brothers Inc.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: 08 CV 6298

JUDGE RAKOFF

TO: (Name and address of Defendant)

Lehman Brothers, Inc.
3 World Financial Center
New York, NY 10285

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Craig Stuart Lanza
Balestriere Lanza PLLC
225 Broadway, Suite 2900
New York, NY 10007

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

DATE  JUL 11 2008

%AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[(1)] | DATE |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                    Date                  *Signature of Server*

                                         _____
                                         *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

JUDGE RAKOFF

Craig Stuart Lanza
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2900
New York, NY 10007
Telephone:   (212) 374-5401
Facsimile:    (212) 208-2613
clanza@balestriere.net
*Attorneys for Plaintiff*

08 CV 6298

RECEIVED
JUL 11 2008
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

KAI KEMNITZ,

                          Plaintiff,

- against -

LEHMAN BROTHERS INC.,

                          Defendant.

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

-------------------------------------------------------- x

Plaintiff Kai Kemnitz ("Kai"), by his attorneys, Balestriere Lanza PLLC, for his Complaint against Defendant Lehman Brothers Inc. ("Lehman" or "the Firm") alleges as follows upon information and belief, except as to allegations concerning Kai, which are made upon personal knowledge:

**PRELIMINARY STATEMENT**

1.   Lehman breached its contract with Kai, one of the Firm's former interest rate traders.   In doing so, Lehman terminated Kai wrongfully, destroyed his professional reputation, his enormous earning potential, and his chances of becoming a

permanent resident of the United States. When Lehman terminated Kai, he was only 26 years old with decades of a satisfying and lucrative career ahead of him.

2.  Kai was an accomplished interest rate trader who was lured away from his steady seven-figure salary at Deutsche Bank by an offer from Lehman.

3.  Lehman entered into a contract with Kai promising to pay him $2.7 million dollars per year. The contract also made it clear that Lehman could only terminate Kai for cause. Lehman could not fire Kai solely for Kai's performance as an interest rate trader.

4.  Shortly after Lehman hired Kai however, the market suffered greatly and Kai's performance correspondingly suffered.

5.  Lehman looked for a way out of paying Kai $2.7 million per year.

6.  Lehman broke its contract with Kai by firing him suddenly and without warning on the pretext that Kai had engaged in inappropriate conduct by uttering a four-letter word at work.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action involves parties who are citizens of different countries. Kai is a foreign national from Germany.

8.  Lehman Brothers is a global financial services firm with its headquarters at 3 World Financial Center, New York, New York.

9.    This Court has personal jurisdiction over the parties because Kai submits to the jurisdiction of this Court, Lehman Brothers is a citizen of New York, does business in New York, and avails itself of the privileges and protections of the laws of New York.

10.    Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(a)(2) because the claims arose in this District.

## PARTIES

11.    Plaintiff Kai is a citizen of Germany presently staying at 45 Wall Street, New York, New York.

12.    Lehman is a global financial services firm with its headquarters at 3 World Financial Center, New York, New York.

## STATEMENT OF FACTS

13.    In or around November 2006, while Kai was working at Deutsche Bank, Lehman approached him.

14.    At that time, Kai was earning over a million dollars a year and had been in negotiations with other firms. Indeed, one such firm, J.P. Morgan had offered Kai a salary of $2.1 million per year in June of 2006.

15.    In or around February 2007, Lehman presented Kai with a formal offer of $2.7 million per year.

16.    In or around March 2007, Kai signed a one-year contract with Lehman, which guaranteed $2.7 million annually. As part of the deal, Lehman also took the $1 million in deferred stock compensation that Kai had earned while at Deutsche Bank.

-3-

Lehman promised to return the stock compensation after the one-year employment period.

17. Lehman also represented to Kai that Lehman would sponsor Kai's green card application.

18. In or around May 2007, after honoring his two-month non-compete agreement with Deutche Bank, Kai began working for Lehman.

19. In or around late June 2007, as a result of the sub-prime mortgage crisis, the market became very volatile and Kai's performance suffered.

20. During this time, rumors were swirling that Lehman was suffering from liquidity issues. Lehman had little incentive to retain the highest-priced recent hires, and as a result, the traders were under tremendous pressure to perform.

21. On or about July 17, 2007, at approximately 2:30 p.m., Kai was involved in a high stress trade.

22. During the trade, Kai had relied on the representations of a broker who was not a Lehman employee.

23. The broker represented to Kai that the broker had an interested buyer.

24. However, it was quickly detected that the broker's representations were false. The broker's misrepresentations caused Kai to sell at an amount decidedly lower then Kai should have and thus, cost Kai and Lehman a significant amount of money.

25. It appeared to Kai that the broker was intentionally untruthful.

26. Kai lost his temper and hurled an expletive at the other broker, telling her in sum and substance, that he would make certain that she could no longer broker for Lehman in the future.

27. On or about July 18, 2007, Kai was terminated solely for his use of a four-letter word the day before.

28. Foul language was commonplace at Lehman and Kai's reaction to the broker's perceived misrepresentation was consistent with his colleagues' behavior in such situations.

29. Lehman's own rules and regulations required investigations into reports of such behavior and required that individuals be given warnings for inappropriate conduct.

30. By Lehman's own standards, Kai's statement would not constitute cause for termination of Kai's contract. However, Lehman used the statement as a pretext in order to fire Kai, avoid Lehman's contractual obligations and pocket the $1 million in deferred stock compensation.

31. Contrary to Lehman's assertions that it would keep the matter discreet, Lehman also posted that Kai had been terminated for inappropriate conduct on Kai's FINRA U4 form.

32. A U4 form is required to document the work experience of registered traders like Kai and is publicly accessible.

33. Lehman also stated to Kai's client contacts that Kai had been fired for cause and for inappropriate conduct.

-5-

34. At the time of his termination, Kai was months away from a green card as he was well over four years into an HB-1 visa.

35. By terminating Kai, Lehman eviscerated Kai's chance at getting a green card and U.S. citizenship.

36. Lehman also violated its agreement with Kai to help sponsor him as a citizen.

37. On or about October 27, 2007, Deutsche Bank rehired Kai for the greatly reduced salary of $150,000 year and in a position where he can no longer work with clients. Kai is currently on an E-2 Visa, which brings no prospects for U.S. citizenship.

38. Under an E-2 Visa, Kai can work only for a German company such as Deutsche Bank.

39. Deutsche Bank is now the only employment opportunity available to Kai and his salary has been reduced by more than $2 million annually.

### FIRST CAUSE OF ACTION
(Breach of Contract)

40. Kai repeats and realleges paragraphs 1 through 39 above as though fully set forth herein.

41. By terminating Kai without cause, Lehman breached its own contract.

42. As a result of Lehman's breach, Kai is entitled to declaratory and compensatory relief.

## SECOND CAUSE OF ACTION
(Breach of Contract: Denial of benefits)

43. Kai repeats and realleges paragraphs 1 through 42 above as though fully set forth herein.

44. At the time of his denial of benefits, plaintiff was an interest trader in the trade department of Lehman Brothers.

45. Lehman intentionally failed to perform its obligations under the terms of the program documents that it drafted and executed. Specifically, it has denied his promised compensation and benefits, and has disrupted the plans Kai made in reliance on his promised separation.

46. Based on the foregoing, defendant's failure to afford Kai the agreed-upon benefits constitutes a breach of its contract with the plaintiff.

## THIRD CAUSE OF ACTION
(Promissory Estoppel)

47. Kai repeats and realleges paragraphs 1 through 46 as though fully set forth herein.

48. Lehman promised that it would sponsor Kai's green card application if he left Deutsche Bank to work for Lehman. Lehman could reasonably expect that that promise to induce Kai to leave Deutsche Bank and join the Firm.

49. Kai did join the Firm in reliance on Lehman's promise and continued to rely on that promise throughout his employment with the firm, and injustice can only be avoided by enforcement of the promise. Kai is entitled to declaratory and compensatory relief.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

50. Kai repeats and realleges paragraphs 1 through 49 above as though fully set forth herein.

51. In or around March 2007, Kai signed a one year contract with Lehman, which guaranteed $2.7 million annually. Lehman also took the $1 million in deferred stock compensation that Kai had earned while at Deutsche Bank, which it promised to return after the one-year employment period.

52. Kai conferred a benefit onto Lehman Brothers including his $1 million in deferred stock compensation.

53. It is unjust for Lehman Brothers to retain this benefit because the Firm did not earn these benefits. Moreover, the Firm unjustly and intentionally terminated Kai.

## FIFTH CAUSE OF ACTION
### (Tortious Interference with Prospective Employment or Advantage)

54. Kai repeats and realleges paragraphs 1 through 53 above as though fully set forth herein.

55. Prior to commission of the acts by the Defendants, Kai was reputed, esteemed and sought after in the business community.

56. After the Firm spread misleading statements to many of Kai's clients, those clients wanted nothing more to do with Kai, believing the Firm's false and misleading statements. This lost client base had cost and will continue to cost Kai many millions of dollars.

## SIXTH CAUSE OF ACTION
### (Defamation and Defamation *Per Se*)

57. Kai repeats and realleges paragraphs 1 through 56 above as though fully set forth herein.

58. Despite assurances by Lehman personnel to Kai that his termination would be handled discreetly, Lehman made numerous misrepresentations regarding the underlying reasons for and means of Kai's departure both in the U5 and in its statements to clients.

59. These statements clearly identified Kai, referencing him by name.

60. Several clients approached Kai and referenced the defamatory statements made by the firm.

61. The various statements made by Defendants were defamatory as they were falset.

62. Defendants made these statements either intentionally or with reckless disregard for the truth.

63. These statements severely damaged Kai by causing great harm to his reputation, both publicly and privately.

### SEVENTH CAUSE OF ACTION
(Self-publication defamation)

64. Kai repeats and realleges paragraphs 1 through 63 above as though fully set forth herein.

65. Kai used language during one of his deals that was in no way unusual from that used on the trading floor.

66. Lehman terminated him and placed a U4 on his permanent record for "inappropriate conduct."

67. Lehman's HR department stated that Kai's conduct was out of the ordinary and not something that happens at Lehman.

68. In reality, Lehman terminated Kai because it was attempting to get out of their contract with him in the face of financial troubles.

69. Lehman gave a false reason for Kai's termination but he has a reasonably foreseeable obligation to repeat the defamatory statements in the course of giving an honest account of the reasons for termination when confronted with inquiries from prospective employers.

70. Lehman knew that its statement that Kai's foul language was unusual for the floor of the stock exchange was false, or it recklessly disregarded its falsity.

71. Kai, in the course of seeking new employment has faced compelled self-publication of the defamatory statement to prospective employers and denial of new employment based on the self-publication.

72. As a result of the foregoing conduct, Kai has suffered and will continue to suffer severe mental anguish and pain, including loss of self-esteem, personal dignity and career fulfillment, as well as nervousness and other physical distress which originated from the aforesaid mental suffering. Kai has also confronted great inconvenience, indignity and risk, including but not limited to a loss of his livelihood and a loss of ability to meet various financial obligations. Thus, Kai was inhibited and

prevented from enjoying life, and was forced to undergo emotional injury, which he will continue to experience in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Kai prays for the following relief:

A. An order that Lehman restore Kai to his former position with full seniority, status, salary increments, bonuses and benefits, to the extent that he would have received but for Lehman's conduct;

B. Compensatory damages in the amount of no less than $1 million for breach of contract, for which Lehman Brothers is liable;

C. Compensatory damages in the amount of no less than $15 million for injury to reputation resulting in loss of current and prospective income; emotional distress, humiliation, and embarrassment;

D. Special damages in the amount of no less than $27 million for lost income, benefits, and promotional opportunities, including an award of front pay compensating Kai for loss of future salary and benefits;

E. Punitive damages, in an amount to be determined at trial, for the wanton, malicious, and intentional nature of the defendant's conduct, punitive damages to deter the defendant from further misconduct;

F. An order enjoining Lehman from engaging in the wrongful practices alleged herein;

G. An award of reasonable attorneys' fees and the costs of this action; and

H. Other such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues so triable in this action.

Dated: New York, New York
July 11, 2008

Respectfully submitted,

_____
Craig Stuart Lanza
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2900
New York, NY 10007
Telephone:   (212) 374-5401
Facsimile:    (212) 208-2613
clanza@balestriere.net
*Attorneys for Plaintiff*